UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RICKY LAWENS,

    Plaintiff,

v.                                                            Case No. 1:21-cv-126
                                                              Hon. Ray Kent

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant,
_____/

## OPINION

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security (Commissioner) which denied his application for disability insurance benefits (DIB).

Plaintiff filed an application for DIB alleging a disability onset date of November 1, 2018. PageID.58. Plaintiff identified his disabling conditions as blind or low vision, Guillian-Barre syndrome, severe migraines, dyslexia, and three spinal blockages. PageID.242. Prior to applying for DIB, plaintiff completed three years of college and had past relevant work as a drywall applicator, a construction worker, and a manufactured buildings repairer. PageID.65. An administrative law judge (ALJ) reviewed plaintiff's application de novo and entered a written decision denying benefits on February 4, 2020. PageID.58-67. This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

1

### I.  LEGAL STANDARD

"The federal courts review the Commissioner's factual findings for substantial evidence and give fresh review to its legal interpretations." *Taskila v. Commissioner of Social Security*, 819 F.3d 902, 903 (6th Cir. 2016). This Court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. § 405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "[T]he threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, -- U.S. --, 139 S. Ct. 1148, 1154 (2019). "Substantial evidence, this Court has said, is more than a mere scintilla. It means — and means only — such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (internal quotation marks and citations omitted).

A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health and Human Services*, 925 F.2d 146 (6th Cir. 1990). The scope of this review is limited to an examination of the record only. This Court does not review the evidence de novo, make credibility determinations, or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). "If the [Commissioner's] decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Secretary of Health and Human Services*, 25 F.3d 284, 286 (6th Cir. 1994).

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. §404.1505; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

## II.   ALJ's DECISION

Plaintiff's application for DIB failed at the fifth step of the evaluation. At the first step, the ALJ found that plaintiff met the insured requirements of the Social Security Act through March 31, 2020, and had not engaged in substantial gainful activity since the alleged onset date of November 1, 2018. PageID.60. At the second step, the ALJ found that plaintiff had the following severe impairments: migraines, Guillian-Barre syndrome with right foot paresthesia, and history of cerebral vascular accident. *Id*. At the third step, the ALJ found that plaintiff does not have an impairment or combination of impairments that meet or equal the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. PageID.61.

The ALJ decided at the fourth step that:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b), that is lift and/or carry 10 pounds frequently and 20 pounds occasionally, but no lifting in excess of 10 pounds with the right upper extremity alone; stand and/or walk 6 hours in an 8-hour workday and sit 6 hours in an 8-hour workday; frequently climb ramps and stairs and balance; occasional stoop and crouch; and never climb ladders, ropes, or scaffolds and never kneel or crawl.
>
> The claimant can have no more than occasional exposure to greater than moderate noise levels and have no exposure to sunlight, extreme cold, and hazards, including unprotected heights and dangerous moving machinery, and no operation of motorized vehicles. The claimant can have no more than occasional exposure to fumes, odors, dusts, gases, and areas of poor ventilation; no ambulation on uneven terrain; no over-shoulder reaching bilaterally; no work with objects smaller than a golf ball with the right upper extremity alone; cannot perform jobs that present objects to this person from either side on a conveyor belt or similar; no conveyor belt or assembly line work at all.

PageID.61-62. The ALJ also found that plaintiff is unable to perform any past relevant work. PgeID.65.

At the fifth step, the ALJ determined that plaintiff could perform a significant number of unskilled jobs at the light exertional level. PageID.66-67. Specifically, the ALJ found

that plaintiff could perform the requirements of unskilled, sedentary work in the national economy such as office helper (200,000 jobs), production inspector (20,000 jobs), and packager (100,000 jobs). *Id*. Accordingly, the ALJ determined that plaintiff has not been under a disability, as defined in the Social Security Act, from November 1, 2018 (the alleged disability onset date) through February 4, 2020 (the date of the decision). PageID.67.

### III. DISCUSSION

Plaintiff has raised two errors on appeal.

**A. The ALJ committed reversible error because he did not have substantial evidence to support his residual functional capacity (RFC) determination for plaintiff.**

RFC is a medical assessment of what an individual can do in a work setting in spite of functional limitations and environmental restrictions imposed by all of his medically determinable impairments. 20 C.F.R. § 404.1545. The ALJ is "charged with the responsibility of evaluating the medical evidence and the claimant's testimony to form an assessment of her residual functional capacity." *Webb v. Commissioner of Social Security*, 368 F.3d 629, 633 (6th Cir. 2004) (internal quotation marks and brackets omitted). As one court stated, "a proper RFC analysis has three components: (1) evidence, (2) logical explanation, and (3) conclusion." *Thomas v. Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019) (as amended Feb. 22, 2019).

Here, plaintiff contends that the ALJ failed to provide a logical explanation, because he went straight from listing evidence to stating a conclusion. The gist of plaintiff's claim is that the RFC failed to mention (1) plaintiff's limited use of his right hand (*e.g.*, handling and fingering) due to a stroke, and (2) "the utter lack of any standing or walking restrictions for a person with documented foot paresthesias". Plaintiff's Brief (ECF No. 14, PageID.664).

5

In determining the RFC, the ALJ noted that plaintiff "experienced an acute ischemic stroke on September 3, 2019, and has residual right sided weakness". PageID.64.[1] The ALJ acknowledged that "[t]he claimant is limited be [sic] right sided weakness and thus, limited to lifting no more than 10 pounds with the right upper extremity alone, no over shoulder reaching, and no work with objects smaller than a golf ball with the right upper extremity alone." PageID.64. The RFC accommodated the right-sided weakness by limiting plaintiff to "no lifting in excess of 10 pounds with the right upper extremity alone," and "no over-shoulder reaching bilaterally; no work with objects smaller than a golf ball with the right upper extremity alone; cannot perform jobs that present objects to this person from either side on a conveyor belt or similar; no conveyor belt or assembly line work at all." PageID.61-62.

The ALJ also found that plaintiff had right foot paresthesia and loss of peripheral vision. PageID.64. The ALJ found that plaintiff 'should not ambulate over uneven terrain due to the right sided weakness and the right foot paresthesia" and "is limited to no work where objects are presented to him on either side and he should avoid hazards" due to the loss of peripheral vision. *Id*. To accommodate these restrictions, the RFC limited plaintiff to only "stand and/or walk 6 hours in an 8-hour workday," to "never climb ladders, ropes, or scaffolds and never kneel or crawl," "no ambulation on uneven terrain," and "no operation of motorized vehicles." PageID.61-62.

---

[1] In addressing plaintiff's RFC, the ALJ stated in part that, "In considering the claimant's allegations and reports, the undersigned concedes the claimant's migraines, Guillain-Barre syndrome and residuals from a stroke impose some limitation on his functioning." PageID.63. The ALJ's statement that he "concedes" that plaintiff has some limitations is the type of language used in an adversarial proceeding not in a Social Security proceeding which is inquisitorial. *See Sims v. Apfel*, 530 U.S. 103, 110–11 (2000) ("Social Security proceedings are inquisitorial rather than adversarial. It is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits . . ."); *Moats v. Commissioner of Social Security*, 42 F.4th 558, 563 (6th Cir. 2022) ("The ALJ, remember, is a neutral factfinder, not an advocate.").

The gist of plaintiff's claim is that these restrictions are not severe enough to address the problems with his feet and right hand. The problem for the Court is that the limitations set out in the RFC are based upon opinions as to plaintiff's abilities before he suffered a stroke or strokes on or about September 3, 2019. The ALJ had no opinion evidence regarding plaintiff's abilities after that date. The ALJ's decision briefly addressed the incident:

> Although the claimant has had improvement with his migraine symptoms, he experienced an acute ischemic stroke on September 3, 2019, and has residual right sided weakness (Ex. 8F; 9F/33). In follow up examinations, there are no focal neurological deficits noted and his speech is not slurred (Ex. 9F/33-34). He demonstrates good judgment and insight, normal mood and affect, and full orientation (Ex. 9F/34). There is no indication of ongoing treatment for his residual symptoms, nor is there ongoing treatment for his Guillain-Barre syndrome. The undersigned has accounted for the limitations resulting from these impairments by limiting the claimant to a light exertional level to avoid excess stress. The claimant is limited be right sided weakness and thus, limited to lifting no more than 10 pounds with the right upper extremity alone, no over shoulder reaching, and no work with objects smaller than a golf ball with the right upper extremity alone. Additionally, he should not ambulate over uneven terrain due to the right sided weakness and the right foot paresthesia. The claimant has described loss of peripheral vision and thus, is limited to no work where objects are presented to him on either side and he should avoid hazards.

PageID.64.

The ALJ based the RFC in large part on the opinion evidence from Dr. Lazarra (May 20, 2019) (PageID.443) and Myung Ho Hahn, M.D. (June 5, 2019) (PageID.150), both of which occurred before the strokes. The ALJ addressed the opinions in pertinent part as follows.

"Following the consultative examination, Dr. Lazarra opined the claimant could stand four to six hours in an eight-hour workday, occasionally bend or stoop, occasionally squat and arise from squatting, and carry, push, or pull less than 25 pounds, but not repetitively (Ex. 4F/2)." PageID.65. With respect to Dr. Lazzara's opinion, the ALJ found the opinion "supported by the normal objective findings of the consultative examination and with the claimant's mild

7

difficulty squatting, but his assessment was completed prior to the claimant's stroke that occurred in September 2019, warranting additional limitation." PageID.65.

With respect to Dr. Hahn, the ALJ found that:

> The State agency consultant Myung Ho Hahn, MD, similarly opined the claimant could perform a light exertional level with frequent and occasional postural movements and avoiding concentrated exposure to noise and avoiding all exposure to loud noise and bright sunlight (Ex. 1A). The undersigned finds the opinion somewhat persuasive, but again, the opinion was provided prior to the claimant's September 2019 stroke and thus, further limitation is warranted.

PageID.65.

While the ALJ refers to a stroke, the medical records state that plaintiff was admitted to the hospital on September 3rd with right sided weakness and dysarthia "secondary to several small acute left frontal/parietal infarcts." PageID.509. At the administrative hearing held about four months later on January 15, 2020, plaintiff testified that he can only lift "five, ten pounds" with his right arm, that he cannot write with his right hand, and that he is still in physical therapy. PageID.94-95. At that time, plaintiff testified that he was still suffering from the effects of the stroke(s):

> Q    Do you know what happened to that 2019 stroke?
>
> A    I I I I talk funny and and my right side's bad.
>
> Q    Okay, has any of that resolved at all?
>
> A    No. I I still have a hard time writing and and obviously I'm still stuttering.
>
> Q    Did you say you were right-handed?
>
> A    Yeah yes, sir.
>
> Q    Okay. And how's the use of that right arm now? Is it pretty pretty [sic] good or not?
>
> A    It's it's better, but not full yet.

> Q      What problems you having there?
>
> A      I  I can't write and the movement.  I'm I'm doing the physical therapy for it.
>
> Q      Okay.  Did it affect just your arm, not your leg?
>
> A      Well, my whole right side.  I had a limp when it first when I had my stroke and everything.
>
> Q      How's the limp doing now, better?
>
> A      Better, I don't drag my leg no more.

PageID.94-95.

The Court concludes the RFC is not supported by substantial evidence.  In this unusual situation, plaintiff suffered one or more strokes while pursuing a disability claim, *i.e.*, a few months after his consultative examination and a few months before his administrative hearing. There is no doubt that plaintiff had additional restrictions due to the stroke.  However, the ALJ provides no basis to support the additional restrictions for use of plaintiff's right hand and arm other than the fact that plaintiff had suffered strokes after Dr. Lazzara and Dr. Hahn had issued their opinions.  In this regard, the ALJ's observation that there is no indication of ongoing treatment for plaintiff's residual symptoms is contradicted by plaintiff's testimony that he cannot write with his right hand and is in physical therapy. Finally, while the ALJ notes that plaintiff's speech was not slurred after the stroke(s), the transcript reflects that plaintiff had difficulty speaking at the administrative hearing and testified that he "talk[s] funny" and is "still stuttering."  Accordingly, this matter will be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) to determine the limitations caused by plaintiff's stroke(s) which occurred on or about September 3, 2018.

> **B.     The Appointment of Andrew Saul as a single commissioner of the Social Security Administration who is**

> **removable only for cause and who serves a longer term than that of the President of the United States violates the separation of powers provision and thus causes the decision in this case to be constitutionally defective because the ALJ and the Appeals Council derived their authority from Saul.**

Finally, plaintiff has raised an argument claiming that the Social Security Administration's structure "is constitutionally invalid as it violates the separation of powers doctrine by interfering with the President's authority to supervise and remove executive branch Officials." Plaintiff's Brief at PageID.665. Plaintiff's claim is without merit. In rejecting a similar argument, one court explained:

> The Court first finds that Commissioner's final decision was not constitutionally defective. Recently, in *Collins v. Yellen*, 141 S. Ct. 1761 (2021), the Supreme Court held that where an unconstitutional statutory removal restriction exists, a plaintiff seeking relief on that basis must show that the restriction caused his alleged harm. In *Collins*, the Court reasoned that the relevant agency officials were "properly appointed" pursuant to a statute that exhibited "no constitutional defect in the . . . method of appointment" and that "the unlawfulness of [a] removal provision" does not strip [an official] of the power to undertake the other responsibilities of his office[.]" The Court continued that "there is no reason to regard any of the actions taken" by the agency during this period "as void." *Id*. at 1787,1788 n. 23. In this case, Plaintiff, as in *Collins*, grounds his constitutional challenge only on the relevant removal restriction not on the propriety of the Commissioner's appointment and offers no evidence to show that there is a nexus between the unconstitutional removal restriction and the denial of his application for disability benefits. The Plaintiff simply argues that all actions taken by the Commissioner – and in turn his appointed ALJ's – are void due to the unconstitutional removal provision. However, *Collins* expressly rejects this view. *Id*. Therefore, the final decision of the ALJ is not constitutionally defective.

*Boger v. Kijakazi*, No. 1:20-CV-00331-KDB, 2021 WL 5023141 at *3 (W.D.N.C. Oct. 28, 2021) (footnote omitted). Plaintiff has offered no evidence to show that there is a nexus between the unconstitutional removal restriction and the denial of his applications for benefits. Accordingly, this claim of error is denied.

### IV. CONCLUSION

For these reasons, the Commissioner's decision will be **REVERSED and REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g). On remand, the Commissioner is directed to re-evaluate plaintiff's limitations caused by the stroke(s) he suffered on or about September 3, 2019. A judgment consistent with this opinion will be issued forthwith.

Dated: September 15, 2022 /s/ Ray Kent
RAY KENT
United States Magistrate Judge